UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-------------------------------------------------------------------------X
KEVIN HECK,

                              Plaintiff,

                      -against-

SHARP CORPORATION; SHARP CORPORATION *d/b/a*
SHARP PACKAGING SOLUTIONS; JOHN CAGGIANO,
*individually*; and, TOM DEUTSCH, *individually*,

                             Defendants.
-------------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

Plaintiff Demands
a Trial by Jury

Plaintiff, KEVIN HECK, as and for his Complaint against the above Defendants respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq.* ("ADA"), the Family and Medical Leave Act of 1993 ("FMLA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of his disabilities and retaliated against by his employer for complaining of harassment and discrimination.

## JURISDICTION AND VENUE

2. This action involves a Question of Federal Law under the Americans with Disabilities Act of 1990 and the Family and Medical Leave Act of 1993. This Court has supplemental jurisdiction over the State causes of action.

3. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within the County of Lehigh, Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events in issue took place in the County of Lehigh, Pennsylvania within the Eastern District of Pennsylvania.

4. On or about September 28, 2017, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") against Defendants as set forth herein.

5. On or around December 28, 2017, the EEOC issued Plaintiff his Notice of Right to Sue.

6. This action is being commenced within 90 days of receipt of the EEOC Right to Sue Letter.

## PARTIES

7. Plaintiff KEVIN HECK (hereinafter also referred to as Plaintiff and/or "HECK") is an individual male who is a resident of the County of Lehigh within the Commonwealth of Pennsylvania.

8. At all times material, Defendant SHARP CORPORATION was and is a business corporation doing business within the Commonwealth of Pennsylvania.

9. At all times material, Defendant SHARP CORPORATION used and continues to use SHARP PACKAGING SOLUTIONS as a registered fictitious name to do business within the Commonwealth of Pennsylvania.

10. At all times material, Defendants SHARP CORPORATION and SHARP PACKAGING SOLUTIONS (hereinafter collectively referred to as "SHARP") were Plaintiff's joint and solo employers.

11. At all times material, Defendant SHARP operated and continues to operate a packaging plant located at 7451 Keebler Way, Allentown, PA 18106 (hereinafter referred to as "the plant.")

12. At all times material, Defendant TOM DEUTSCH (hereinafter referred to as "DEUTSCH") was and is an employee of Defendant SHARP.

13. At all times material, Defendant DEUTSCH held direct supervisory authority over Plaintiff.

14. At all times material, Defendant JOHN CAGGIANO (hereinafter referred to as "CAGGIANO") was and is an employee of Defendant SHARP.

15. At all times material, Defendant CAGGIANO held direct supervisory authority over Plaintiff.

## MATERIAL FACTS

16. On or around August 31, 2011, Defendant SHARP hired Plaintiff as a Packaging Line Mechanic, working at Defendant's Allentown plant.

17. On or around August 24, 2016, Plaintiff underwent surgery as a result of a chronic disability regarding his neck.

18. On or around May 11, 2017, Plaintiff received work restrictions from his physician following his recovery, which Plaintiff provided to Defendant Sharp. While Defendant

purported to accommodate Plaintiff's restrictions, Defendant actually required Plaintiff to perform additional tasks that exceeded his restrictions, despite Plaintiff's protests.

19. Close to the end of Plaintiff's shift on or around that same day, Plaintiff was called to meet with Defendant DEUTSCH, who gave Plaintiff a memo requesting additional information about Plaintiff's restrictions, and also gave him FMLA and short-term disability paperwork.

20. Accordingly, Plaintiff's understanding was that he was not to return to work until the additional information about his disabilities was provided to DEUTSCH.

21. On or around May 12, 2017, Plaintiff (via counsel) sent a response letter to the attention of Defendants DEUTSCH and CAGGIANO reiterating that Plaintiff suffered from a disability, and had requested accommodations. Plaintiff's letter further informed Defendants that he rejected Defendants' attempts to force him to take FMLA or short-term disability, as he could work with reasonable accommodations. Plaintiff's letter also placed Defendants on notice of Plaintiff's intent to file a Charge of Discrimination with the EEOC.

22. On or around May 15, 2017, Defendant replied to Plaintiff's letter, alleging that Plaintiff was free to return to work, and that was not being forced to take a leave of absence. Due to Defendants' history of failing to accommodate Plaintiff's disabilities, Plaintiff's counsel advised Defendants that it was unclear whether the proper accommodations were being provided.

23. At all times material, Defendants were aware that Plaintiff also suffers from the disability of severe anxiety. While Defendants were made aware of this from the outset of

Plaintiff's employment, Plaintiff's former counsel explicitly reminded Defendants of Plaintiff's severe anxiety (in writing) on May 26, 2017.

24. Plaintiff's anxiety was exacerbated by Defendants' disregard of Plaintiff's requests for reasonable accommodations for his other disability.

25. On or around June 9, 2017, Defendants advised Plaintiff that he was not FMLA-eligible.

26. Plaintiff then requested that he be permitted to return to work on the third shift, as an accommodation under the ADA, effective July 9, 2017.

27. During this general time period, Plaintiff's anxiety greatly increased as a result of the continued uncertainty regarding his employment. Accordingly, Plaintiff visited Kimberly Adams, LCSW, on or around July 14, 2017, who continues to treat him for anxiety. Ms. Adams accordingly advised Defendants that Plaintiff needed to be accommodated by returning to work and working only on third shift.

28. On or around July 25, 2017, Defendant purported to grant Plaintiff's request, and Plaintiff returned to working on the third shift on that date.

29. Since Plaintiff returned to work, Defendant continued to fail to accommodate him in accordance with his restrictions, and began to retaliate against him as a result of his request for accommodations.

30. Specifically, by means of example, Defendants regularly reassigned Plaintiff to burdensome, menial tasks, increased scrutiny that other employees did not face, and regularly placed Plaintiff in unsafe situations. Plaintiff was also continually marginalized and harassed while at work by co-workers as a result of his disabilities.

31. On or around August 24, 2017, Plaintiff was informed that he needed to meet with Defendants' Human Resources department on the following day.

32. On the same day, Plaintiff's counsel once again informed Defendants that Plaintiff was being subjected to harassment, discrimination, and retaliation as a result of his disabilities and requested accommodations, and again advised that Plaintiff would be filing a Charge with the EEOC.

33. Following counsel's communication, the scheduled meeting with Human Resources did not occur. However, Defendants continue to fail to take meaningful remedial action. By means of example, Defendants regularly refuse to assist Plaintiff when requested, constantly subject Plaintiff to public ridicule, actively prevent Plaintiff from completing his work at times, and continue to antagonize Plaintiff during the workday. On at least one occasion, Defendants required Plaintiff to stay beyond his shift to assist other mechanics, but then refused to provide Plaintiff with required assistance, causing Plaintiff to suffer severe flare-ups of anxiety and pain from his other disability, in direct violation of Plaintiff's requested accommodations.

34. Defendants also continued to harass and discriminate against Plaintiff in other ways, including assigning Plaintiff to cover four production rooms at once (other employees were not required to do so) and failing to inform Plaintiff of mandatory meetings.

35. On one occasion, when Plaintiff happened to find out that a mandatory meeting was happening just prior to its start time, he was able to attend just as it was beginning. During that meeting, Defendant CAGGIANO began to single out Plaintiff and accuse him of not performing his job correctly. Furthermore, CAGGIANO told Plaintiff that he was no longer permitted to go into Defendant's maintenance shop when his anxiety flared up (despite this being one of Plaintiff's requested accommodations). Due to CAGGIANO's prior harassment, Plaintiff began to have an anxiety attack from

CAGGIANO's intensive questioning. Accordingly, Plaintiff asked CAGGIANO if he could be excused. However, CAGGIANO then began screaming at Plaintiff, yelling "Why? What the fuck is wrong with you?" in front of numerous other co-workers. Plaintiff repeated that he needed to be excused, and subsequently exited the room, but was followed by CAGGIANO, who pursued Plaintiff down the hallway, continuing to yell and curse at him in full view of numerous other employees. The confrontation only ended when Plaintiff walked into Defendant's Human Resources office to report CAGGIANO's harassment.

36. In or around late January 2018, as a result of the continued harassment and discrimination, Plaintiff again requested FMLA forms from Defendant's Human Resources department. When Plaintiff did so, the employee with whom he spoke was rude and dismissive, and expressed doubt that Plaintiff had enough hours to qualify for FMLA leave, even though Plaintiff could see from the computer screen that he had over 1655 hours (clearly more than the requisite 1250).

37. To date, Plaintiff continues to suffer from harassment, ridicule and intimidation from both his co-workers and supervisors. On information and belief, Defendants do not treat other, non-disabled mechanics in such a manner.

38. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

39. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of

enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

40. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendants.

41. The above are just some examples, of some of the sexual discrimination and harassment to which Defendants subjected Plaintiff.

42. Defendants have exhibited a pattern and practice of not only tolerating discrimination and retaliation, but also failing to investigate and cure the wrong once it had been reported.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE
### AMERICANS WITH DISABILTIES ACT
### (Not Against Individual Defendants)

43. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint

44. Title 42 of the Americans with Disabilities Act of 1990, Section 126, Subchapter 1, Section 12112, Discrimination [Section 102] states: (a) General Rule – No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

45. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff on account of his disabilities.

46. As such, Plaintiff has been damaged as set forth herein.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER THE
### AMERICANS WITH DISABILITIES ACT

**(Not Against Individual Defendants)**

47. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

48. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter IV, § 12203, states: "(a) Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

49. Defendants retaliated against Plaintiff by discriminating against and retaliating against Plaintiff because he opposed Defendants' unlawful employment practices.

50. As such, Plaintiff has been damaged as set forth herein.

### AS A THIRD CAUSE OF ACTION
### FOR DISCRIMINATION
### UNDER STATE LAW

51. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

52. The Pennsylvania Human Relations Act ("PHRA") § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or

privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

53. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disabilities.

54. Plaintiff hereby states his claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION
## UNDER STATE LAW

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

56. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

57. Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of his employer.

## AS A FIFTH CAUSE OF ACTION
## FOR AIDING & ABETTING
## UNDER STATE LAW

58. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

59. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

60. Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS A SIXTH CAUSE OF ACTION FOR INTERFERENCE UNDER THE FAMILY AND MEDICAL LEAVE ACT

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. Section 2615 of the Family and Medical Leave Act states as follows:

Prohibited Acts: (a) Interference with Rights – (1) Exercise of rights: It shall be unlawful for any employer to interfere with, restrain, or deny the attempt to exercise of or the attempt to exercise, any right provided under this subchapter.

63. Accordingly, Defendant SHARP violated the Family and Medical Leave Act by interfering with Plaintiff's rights thereunder.

### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE FAMILY AND MEDICAL LEAVE ACT

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. Section 2615 of the Family and Medical Leave Act states as follows:

Prohibited Acts: (a) Interference with Rights – (2) Discrimination: It shall be unlawful for any employer to discriminate against any individual for opposing any practice made unlawful by this subchapter.

66. Accordingly, Defendant SHARP violated the Family and Medical Leave Act by discriminating against Plaintiff based on his exercise of FMLA rights.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
March 22, 2018

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

By: _____
Nathaniel N. Peckham, Esq.
1845 Walnut Street, Suite 1601
Philadelphia, PA 19103
Tel. (215) 391-4790
nathaniel@dereksmithlaw.com